UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DOROTA BROUSMICHE,<br><br>                                         *Plaintiff*,<br><br>          v.<br><br>AVEO PHARMACEUTICALS, INC. and<br>LG CHEM LIFE SCIENCES INNOVATION<br>CENTER, INC.,<br><br>                                         *Defendants*. | Civil Action No. 24-cv-40121-MRG |

**<u>ORDER ON DEFENDANT'S MOTION TO DISMISS (ECF No. 14)</u>**

**GUZMAN, J.**

Plaintiff Dorota Brousmiche ("Plaintiff") brings this action against Defendants AVEO Pharmaceuticals, Inc. and LG Chem Life Sciences Innovation Center, Inc. (collectively, "Defendants") for violation of public policy, breach of privacy under Mass. Gen. Laws ch. 214, violations of the Paid Family Leave Act and the Family Medical Leave Act, negligent and intentional infliction of emotional distress, discrimination based on her disability, failure to accommodate, and retaliation. Before the Court is LG Chem Life Sciences Innovation Center, Inc.'s Motion to Dismiss [ECF No. 14] pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion to dismiss is **GRANTED**.

**I.      BACKGROUND**

Plaintiff Dorota Brousmiche ("Brousmiche") began working for AVEO Pharmaceuticals, Inc. ("AVEO") on January 4, 2020, as the Director of GXP Quality Assurance. [ECF No. 1-1

("FAC") ¶ 6]. She had no direct reports but reported to Vice President of GXP Quality Assurance Julie Harrison ("Harrison"). [Id. ¶ 7]. During the initial hiring process, Plaintiff disclosed to AVEO that she was a breast cancer survivor. [Id. ¶ 10].

Plaintiff received positive performance reviews and worked long hours to meet product deadlines, receiving stock options when hired and as incentive compensation until AVEO was acquired by LG Chem Life Sciences USA, Inc. ("LG Chem") in January 2023. [Id. ¶ 8]. The work Harrison assigned to Plaintiff was disproportionate compared to the work she gave to her other direct reports. [Id. ¶ 27].

In July 2021, Plaintiff took three weeks of leave under the Massachusetts Paid Family and Medical Leave Act ("PFMLA") to undergo breast reconstruction surgery secondary to cancer. [Id. ¶¶ 11-12]. She returned to work within three weeks, full-time and with no restrictions. [Id. ¶ 12]. During Plaintiff's medical leave, a coworker, Praveen Prasanna ("Prasanna"), repeatedly called her about work-related issues on her personal phone, expecting her to work on the issues he raised. [Id. ¶¶ 13-14]. Despite HR's directive to cease communication during her leave, Prasanna persisted in contacting Plaintiff. [Id. ¶ 16].

In January 2022, Plaintiff had complications from her breast cancer treatment and surgeries that forced her to take leave until March 2022. [Id. ¶ 28]. When Plaintiff returned to work full time with AVEO, Harrison began to treat her more harshly. [Id. ¶ 29]. Plaintiff learned that Harrison had told other employees about Plaintiff's breast cancer without her consent or knowledge. [Id. ¶ 30]. Harrison told other employees that she was completely blindsided by Plaintiff's medical leave. [Id. ¶ 31].

Upon her return, Plaintiff found an unchanged work environment. [Id. ¶ 32]. Harrison continued to delegate her work to her direct reports, including mission-critical decisions. [Id. ¶

2

33]. The workload remained overwhelming, and Harrison did not assist her direct reports with their projects or supervise them as needed, leaving more work to fall on Plaintiff. [Id. ¶ 34]. In January 2023, LG Chem acquired AVEO. [Id. ¶ 6; Exhibit 1].[1] Plaintiff chose to continue to work for AVEP following the acquisition. [Id. ¶ 9]. Also in January 2023, Defendants terminated Harrison, and all of Harrison's job functions were divided across her direct reports. [Id. ¶ 35]. Plaintiff was working long hours with impossible deadlines to fulfill, given all of the job functions she was expected to execute. [Id. ¶ 36].

On February 6, 2023, Plaintiff was asked to sign a certificate of analysis by an AVEO employee, Cecilia Bastos ("Bastos"), for a commercial product. [Id. ¶ 37]. Plaintiff noticed that the certificate had the incorrect date of manufacture and an incorrect description of the product. [Id. ¶ 38]. Pursuant to company and FDA protocol, Plaintiff sent the certificate back to Bastos to request revision from the manufacturer. [Id. ¶ 39]. The manufacturer returned the product with only one of the two errors corrected, and Bastos refused to send it back for the final correction. [Id. ¶ 40].

Pursuant to FDA regulations, knowingly signing an incorrect certificate could result in penalties and fines to the company and personal liability to the employee signing it. [Id. ¶ 41]. Thus, Plaintiff refused to sign the certificate of analysis. [Id. ¶ 42]. Plaintiff was under immense pressure to sign the certificate from many managers, including Chief Operating Officer Jed Ledell ("Ledell"). [Id. ¶ 43]. When Plaintiff finally stated in an email that she would "give up and sign," Ledell requested a meeting with Plaintiff. [Id. ¶ 44]. During this meeting, Ledell asked Plaintiff to follow up on that email to "explain herself" and to "let everyone know she was fine" with the action of signing the faulty certificate. [Id. ¶ 45]. Plaintiff was not fine with signing the

---

[1] The FAC includes press releases about the acquisition and AVEO and LG Chem's Massachusetts corporate filings with the Secretary of the Commonwealth. FAC, Exhibits 1-3.

faulty certificate, and Ledell made it very clear that Plaintiff needed to make a decision about this action by February 15, 2023, otherwise her position would be in jeopardy. [Id. ¶ 46].

Due to the ongoing stress from her job, Plaintiff applied for leave at the instruction of her physician, which began on February 21, 2023. [Id. ¶ 47]. Plaintiff applied for this leave through the appropriate channels with Human Resources, and her physicians completed all necessary forms. [Id. ¶ 48]. Plaintiff's return date was set for May 24, 2023, and her physician provided an accommodation request that she only work 40 hours a week. [Id. ¶ 49].

When Plaintiff returned to work, Human Resources stated that "while [they] are excited to have [Plaintiff] return, [they] are also surprised." [Id. ¶ 50]. As far as Plaintiff knew, she had not been terminated, and AVEO was fully aware of her return date. [Id. ¶ 51]. After that, Plaintiff was told to have no contact with other employees and was given very little work to complete. [Id. ¶ 52]. Rather than work with Plaintiff, AVEO retaliated against her for her refusal to sign the certification and for her extended medical leave. [Id. ¶ 53].

On August 10, 2023, Plaintiff was invited to a meeting with Ledell for a quarterly check-in, where Plaintiff believed the harassment and retaliation would continue. [Id. ¶ 54]. She became so anxious she was forced to take leave once more. [Id.] The stress of Defendants' retaliation was causing Plaintiff anxiety and depression, and other health issues, including the loss of her hair and panic attacks. [Id. ¶ 55]. It exacerbated her symptoms of cancer and treatment, including nausea and vomiting, and also exacerbated her Post Traumatic Stress Disorder, a prior existing disability. [Id.]

In mid-2023, Plaintiff applied for and received Long-Term Disability. [Id. ¶ 56]. Shortly after hearing this news, Defendants terminated Plaintiff. [Id]. Plaintiff thereafter filed suit in Worcester Superior Court. On September 30, 2024, Defendants removed the action to this Court.

4

## II.   LEGAL STANDARDS

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). But under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)).

## III.   DISCUSSION

LG Chem seeks dismissal of all claims asserted against it, arguing that it is a separate entity from Plaintiff's actual employer, AVEO, and therefore cannot be held liable under any theory. In LG Chem's view, Plaintiff improperly seeks to include it as a defendant solely because LG Chem acquired AVEO three years into Plaintiff's four-year tenure with AVEO.

Massachusetts courts define "employer" as one "who has direction and control of the employee and to whom . . . [the employee] owe[s] obedience in respect of the performance of his work." DeLia v. Verizon Commc'ns Inc., 656 F.3d 1, 4 (1st Cir. 2011) (alteration in original) (quoting Roberts v. Delta Air Lines, Inc., 599 F.3d 73, 78 (1st Cir. 2010)). When two or more entities are so interrelated or intertwined, their separate corporate identifies may be disregarded to treat all entities as a "single employer." Wilfert Bros. Realty Co. v. Mass. Comm'n Against Discrimination, No. 0202671, 2006 WL 935105, at *2 (Mass. Super. Mar. 21, 2006). Under Massachusetts law, "the presumption of corporate separateness may be overcome only in rare particular circumstances in order to prevent gross equity." Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 127-29 (1st Cir. 2006). To determine whether nominally separate companies constitute a single employer for purposes of employment claims, the First Circuit applies a four-factor test examining: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 42 (1st Cir. 2007) (citing Romano v. U-Haul Int'l, 233 F.3d 655, 662 (1st Cir. 2000)). A court need not find all four factors. Id. (citing Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1184 (10th Cir. 1999); Pearson v. Component Tech. Corp., 247 F.3d 471, 486 (3d Cir. 2001)). Instead, the inquiry should be applied flexibly, placing special emphasis on the control of employment decisions. See Romano, 233 F.3d at 666 ("We choose to follow the more 'flexible' approach . . . which focuses on employment decisions, but only to the extent that the parent exerts 'an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions.'"). Applying the facts alleged in the First Amended Complaint to each factor, Plaintiff has failed to state a plausible claim that LG Chem and AVEO operated as a single employer.

A.   **Interrelation of Operations**

Interrelation of operations requires that the parent company be "directly [involved] in [its] subsidiary's daily decisions" in a way that was "proactive." Romano, 233 F.3d at 667. This factor examines whether the entities had "shared employees, services, records, office space, and equipment, comingled finances," and whether the parent completed "subsidiary tasks such as payroll, books, and tax returns." Id. at n.7.

The factual allegations in the First Amended Complaint demonstrate the opposite of operational integration. AVEO and LG Chem maintained separate corporate identities, with AVEO functioning as "a wholly owned subsidiary of" LG Chem and LG Chem serving as "the parent company of AVEO," each submitting separate corporate filings with the Secretary of the Commonwealth of Massachusetts. [FAC ¶¶ 2-3, Exhibits 1-3]. The companies maintained separate principal offices during the relevant time period, with LG Chem located at "One Marina Park Dr., 12th Floor, Boston, MA, 02210" and AVEO at "30 Winter Street, Boston, MA 02018." [Id.] Moreover, each entity maintained separate goals, with AVEO remaining as "a commercial stage, oncology-focused" company and LG Chem as covering "development, manufacture, and global commercialization of pharmaceutical products" across multiple therapeutic areas including "oncology," "immunology," and "diabetes and related metabolic diseases." [Id. at Exhibit 1]. These allegations, without more, fail to establish interrelation of operations between the companies.

B.   **Common Management**

Common management requires "[t]he same persons managing and supervising different entities." Daigle v. Alexander, No. 915588F, 1993 WL 818723, at *4 (Mass. Super. Ct. Nov. 5, 1993). In other words, in the context of a parent company and a subsidiary, all facets of the

7

subsidiary's operations, from corporate to facilities management must be entirely dictated by the parent company. See Engelhardt v. S.P. Richards Co., 472 F.3d 1, 6 (1st Cir. 2006) (finding no common management where "the two companies share two independent directors who are not involved in running either business").

In the instant case, Plaintiff has not put forth any allegations identifying any LG Chem employees by name or alleging that any LG Chem employee hired or managed AVEO employees, or vice versa. Instead, the First Amended Complaint focuses entirely on AVEO employees, noting that Plaintiff was hired to work at AVEO, was managed by Harrison, an AVEO employee, both pre-acquisition and post-acquisition, was "asked to perform tasks by an AVEO employee" post-acquisition, and that "AVEO [] retaliated against her." [FAC ¶¶ 6-7, 37, 43-46, 53-54]. While Plaintiff references press releases announcing LG Chem's intent to appoint a Chief Financial Officer, "neither the FAC, nor the press releases, nor any other exhibit, identifies any LG Chem employees by name" or establishes actual shared management control. [ECF No. 22 at 4]. The lack of specific factual allegations regarding shared management personnel precludes a finding of common management. See Daigle, 1993 WL 818723, at *4.

### C.  Centralized Control of Labor Relations

Centralized control of labor operations, defined as "control of employment decisions," is "the most important of the four [joint or single employer] factors." Romano, 233 F.3d at 666. To satisfy this factor, "a parent must control the day-to-day employment decisions of the subsidiary," requiring "an amount of participation that is sufficient and necessary to [control] the total employment process, even absent total control or ultimate authority over hiring decisions." Id.

The First Amended Complaint is entirely silent regarding whether, how, and through which LG Chem employees, LG Chem contracted with, paid, provided benefits to, managed leave requests for, terminated, or otherwise controlled Plaintiff. Plaintiff acknowledges that she "began working for AVEO . . . on January 4, 2020," that "in or about January 2023, [LG Chem] acquired AVEO," and that she "chose to continue to work for [LG Chem]" post-acquisition. [FAC ¶¶ 6-9]. However, these bare allegations fall well short of establishing the day-to-day employment control required under Massachusetts law. Indeed, in the employment context, Plaintiff must plead that LG Chem exerted "direction and control" of Plaintiff such that Plaintiff "owe[d] obedience [to them] in respect of the performance of [their] work." DeLia, 656 F.3d at 4. The First Amended Complaint's silence on these fundamental employment relationship elements precludes a finding of centralized labor control.

**D.    Common Ownership**

While the First Amended Complaint establishes that LG Chem acquired AVEO in January 2023, creating common ownership, this factor alone is insufficient to overcome the presumption of corporate separateness. As the First Circuit has repeatedly warned, a parent's majority ownership "by itself merits little weight" because "it is a bedrock principle of corporate law that the corporation and its shareholders are distinct entities" and ownership alone "will not create liability beyond the assets of the subsidiary." Cleary v. Am. Cap., Ltd., 59 F. Supp. 3d 249, 256 (D. Mass. 2014) (collecting cases). Courts have consistently held that "common ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation or its employees." Parexel Int'l LLC v. PrisymID Ltd., No. 23-CV-12381-ADB, 2024 WL 3471930, at *4 (D. Mass. July 19, 2024). Here, common ownership through

9

acquisition, without more, cannot establish single employer status where the other three factors are not satisfied by the factual allegations in the First Amended Complaint.

## IV.     CONCLUSION

For the foregoing reasons, LG Chem's Motion to Dismiss [ECF No. 14] is **GRANTED**.

**SO ORDERED.**

Dated: September 24, 2025

                                            */s/ Margaret R. Guzman*
                                            Margaret R. Guzman
                                            United States District Judge